**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

DUNKIN' DONUTS FRANCHISED                    :
  RESTAURANTS LLC,
DD IP HOLDER LLC and                         :

               Plaintiffs,        :

        v.                 : Case No. 08-CV-3970 (AKH)

JAISRIKAR 2, INC.,                           :

              Defendant.          :

------------------------------------------------------------X

## COMPLAINT

      Plaintiffs DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC and DD IP HOLDER LLC, by their attorneys, O'ROURKE & DEGEN, PLLC, as and for their complaint, allege as follows:

## INTRODUCTION

      1.     Plaintiff Dunkin' Donuts Franchised Restaurants LLC is the franchisor of Dunkin' Donuts franchises and the licensee of the Dunkin' Donuts trademarks. Plaintiff DD IP Holder LLC is the holder of the Dunkin' Donuts trademarks.

      2.     Defendant owns and operates a Dunkin' Donuts shop located in the Southern District of New York.

      3.     Plaintiffs terminated Defendant's Franchise Agreement, because it failed to cure defaults in payments.

      4.     Defendant continues to use the name, trademarks and service marks of "Dunkin' Donuts" without authorization to do so and has not removed the signs and other indicia that the site was a Dunkin' Donuts shop.

## THE PARTIES

      5.     Plaintiff DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC ("Dunkin' Donuts"), successor in interest to Dunkin' Donuts Incorporated, is a foreign limited liability

company, duly organized and existing by virtue of the laws of the State of Delaware, with its principal place of business in Canton, Massachusetts, and authorized to do business in the State of New York.

6.    Plaintiff DD IP HOLDER LLC is a foreign limited liability company, duly organized and existing by virtue of the laws of the State of Delaware, with its principal place of business in Canton, Massachusetts.

7.    Upon information and belief, Defendant JAISRIKAR 2, INC. is a domestic corporation, duly organized and existing by virtue of the laws of the State of New York, with a place of business in the County, City and State of New York.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over this action pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a) & 1121, and 28 U.S.C. §§ 1331, 1332, 1338 & 1367(A).  The amount in controversy exceeds $75,000, exclusive of interest and costs.

9.    Venue in the Southern District of New York is based upon 28 U.S.C. § 1391(b).

## TRADEMARKS, SERVICE MARKS AND PROPRIETARY MARKS

10.    DD IP Holder LLC owns the trademark, service mark and trade name "Dunkin' Donuts," which is registered on the Principal Register of the United States Patent Office to identify for the public the source of goods and services marketed under its name, as well as related marks.

11.    Dunkin' Donuts has the license to use and to license others to use the Dunkin' Donuts marks and trade name and since approximately 1950 it and its predecessors in interest have used them continuously to identify their doughnut shops and the doughnuts, pastries, coffee and other products associated with those shops.

12.    DD IP Holder LLC owns numerous federal registrations for the mark Dunkin' Donuts and related marks.  Among these registrations are Registration Nos. 2,748,147, 1,148,165 and 1,159,354.  Each of these registrations is in full force and effect and is incontestable

2

pursuant to 15 U.S.C. § 1065.

13.     The Dunkin' Donuts trademarks and trade name are distinctive and famous and have acquired secondary meaning.

14.     The Dunkin' Donuts trademarks and trade name are utilized in interstate commerce.

15.     The Dunkin' Donuts marks have been widely advertised and promoted by Dunkin' Donuts over the years.  Over the past 35 years Dunkin' Donuts and its franchisees spent more than $1,500,000,000 on advertising and promoting the Dunkin Donuts marks.  Dunkin' Donuts spent approximately $167,000,000 in fiscal year 2005 alone on advertising and promotion.

16.     Dunkin' Donuts and its franchisees currently operate approximately 5,600 units in the United States and 2,000 outside the United States.  Dunkin' Donuts shops feature Dunkin' Donuts distinctive trade dress, including pink and orange color scheme, signage, menu boards, product selection and names, interior design and doughnut cases.  In the more than fifty years since the Dunkin' Donuts System began, hundreds of millions of customers have been served in Dunkin' Donuts shops.

17.     As a result of the extensive sales, advertising and promotion of items identified by the Dunkin' Donuts marks, the public has come to know and recognize the Dunkin' Donuts marks, and to associate them exclusively with the products and services offered by Dunkin' Donuts and its franchisees.  The Dunkin' Donuts marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Dunkin' Donuts and DD IP Holder LLC, representing and embodying Dunkin' Donuts' considerable goodwill and favorable reputation.

## THE FRANCHISE AGREEMENT

18.     On May 10, 2004, Dunkin' Donuts Incorporated, predecessor in interest of Dunkin' Donuts Franchised Restaurants LLC, and Defendant entered into a Franchise Agreement (collectively with any amendments the "Franchise Agreement").

3

19.     The Franchise Agreement authorized Defendant to operate a restaurant utilizing the Dunkin' Donuts System at 105 West 125th Street, New York, New York (the "Premises").

## THE DEFAULT NOTICE

20.     On March 31, 2008, pursuant to the Franchise Agreement, Dunkin' Donuts sent Defendant a Notice to Cure (the "Notice to Cure") by overnight carrier to the Premises and to 1630 Madison Avenue, New York, New York 10029.

21.     The Notice to Cure demanded that Defendant cure defaults in submitting sales reports and in paying franchise fees, advertising fees, and other charges.

22.     Upon information and belief, on April 1, 2008, Defendant received the Notice to Cure.

23.     More than fifteen (15) days passed after Defendant received the Notice to Cure without the defaults having been cured.

## TERMINATION OF THE FRANCHISE AGREEMENT

24.     On April 24, 2008, pursuant to the Franchise Agreement, Dunkin' Donuts sent Defendant a Notice of Termination (the "Notice of Termination") by overnight carrier to the Premises and to 1630 Madison Avenue, New York, New York 10029.

25.     Upon information and belief, on or about April 25, 2008 Defendant received the Notice of Termination.

26.     The Notice of Termination terminated the Franchise Agreement, effective immediately, based upon the failure to cure the defaults listed in the Notice to Cure.

## OBLIGATIONS FOLLOWING TERMINATION OF THE FRANCHISE AGREEMENT

27.     In the Franchise Agreement Defendant agreed that it would not do or perform, directly or indirectly, any act injurious or prejudicial to the goodwill associated with Plaintiffs' proprietary marks and the Dunkin' Donuts System.

28.     The Franchise Agreement also contains acknowledgments and agreements by Defendant concerning the use of Plaintiffs' proprietary marks or any methods associated with the

4

name "Dunkin' Donuts" after the Franchise Agreement has been terminated.

29.    Under the Franchise Agreement Defendant agreed that following its termination, it would not use the name or proprietary marks of Dunkin' Donuts.

## OBLIGATIONS TO PAY PLAINTIFFS' ATTORNEY'S FEES AND COSTS

30.    The Franchise Agreement further provides that if it is terminated by reason of the failure of Defendant to cure a default, following notice, then Defendant shall pay all damages, costs and expenses, including attorney's fees, incurred by Dunkin' Donuts as a result thereof.

31.    Defendant agreed that should it fail to timely remit monies due under the Franchise Agreement, it would pay Plaintiffs' collection costs, reasonable attorney's fees, and interest on the unpaid amounts.

32.    Plaintiffs are incurring costs and expenses, including attorney's fees, as a result of Defendant's breach of the Franchise Agreement.

### COUNT 1
### Breach of Contract - Franchise Agreement
### (termination and injunction)

33.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 32 of the complaint as if fully set forth herein.

34.    The failure of Defendant to timely cure the monetary and sales reporting defaults set forth in the Notice to Cure sent pursuant to the Franchise Agreement constitutes a breach of its obligations under the Franchise Agreement.

35.    The breach of the Franchise Agreement constitutes grounds for terminating the Franchise Agreement.

36.    Dunkin' Donuts terminated the Franchise Agreement and demanded that Defendant comply with its post-termination provisions.

37.    Defendant has refused to cease using the Dunkin' Donuts trademarks, trade name and trade dress and has failed to comply with the post-termination provisions of the Franchise Agreement.

38.    As a result of Defendant's actions, Dunkin' Donuts and DD IP Holder LLC are suffering and continue to suffer irreparable harm and have incurred and continue to incur monetary damages in an amount yet to be determined.

## COUNT 2
## Breach of Contract - Franchise Agreement
## (receivables)

39.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 38 of the complaint as if fully set forth herein.

40.    Defendant has failed to pay Dunkin' Donuts franchise fees, advertising fees, late charges, attorney's fees and costs due under the Franchise Agreement, although due demand has been made for the same.

41.    As a result of Defendant's actions, Dunkin' Donuts is entitled to a judgment in an amount yet to be determined for all monies now due and which hereafter become due under the Franchise Agreement, plus interest, attorney's fees and costs.

## COUNT 3
## Trademark Infringement

42.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 41 of the complaint as if fully set forth herein.

43.    The use in commerce by Defendant of the Dunkin' Donuts trade name and trademarks without the consent of Dunkin' Donuts is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendant are licensed, franchised, sponsored, authorized, or otherwise approved by Dunkin' Donuts.

44.    Such continued use of the Dunkin' Donuts trade name and trademarks infringes upon the exclusive rights of Dunkin' Donuts and DD IP Holder LLC in the Dunkin' Donuts trademarks under § 32 of the Lanham Act (15 U.S.C. § 1114) and applicable state law.

45.    Defendant's acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

46.    As a result of Defendant's infringement of the Dunkin' Donuts trade name and

trademarks, Dunkin' Donuts and DD IP Holder have suffered and are continuing to suffer substantial and irreparable harm to the goodwill associated with the Dunkin' Donuts trade name and trademarks and have incurred and are continuing to incur monetary damages in an amount yet to be determined.

## COUNT 4
## Unfair Competition

47.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 46 of the complaint as if fully set forth herein.

48.    The use in commerce by Defendant of the Dunkin' Donuts trade name and trademarks without Dunkin' Donuts' consent is likely to cause confusion, or to cause mistake, or to deceive the public as to the origin, sponsorship, or approval of its goods, services or commercial activities.

49.    Such continued unauthorized use of the Dunkin' Donuts trade name and trademarks violates § 43 of the Lanham Act (15 U.S.C. § 1125(a)) and applicable state law.

50.    Defendant's acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

51.    As a result of Defendant's  unfair competition, Dunkin' Donuts and DD IP Holder LLC have suffered and are continuing to suffer substantial and irreparable harm to the goodwill associated with the Dunkin' Donuts trade name and trademarks and have incurred and are continuing to incur monetary damages in an amount yet to be determined.

## COUNT 5
## Trade Dress Infringement

52.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 51 of the complaint as if fully set forth herein.

53.    Defendant's shop is identified by signs, exterior appearance, and other items on which the words "Dunkin' Donuts" appear in the same "frankfurter" lettering style and in the same distinctive pink and orange color scheme as Dunkin' Donuts uses for the doughnut shops

7

operated by Dunkin' Donuts licensees.

54.    Defendant's use of the trade dress that is identical or confusingly similar to Dunkin' Donuts' trade dress constitutes a false designation of the origin of its shop which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of Defendant's shop with the Dunkin' Donuts shop operated by Dunkin' Donuts licensees.

55.    Defendant's adoption of the Dunkin' Donuts trade dress violates § 43 of the Lanham Act (15 U.S.C. § 1125) and applicable state law.

56.    Defendant's acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

57.    As a result of Defendant's infringement of Dunkin' Donuts' trade dress, Dunkin' Donuts and DD IP Holder LLC have suffered and are continuing to suffer irreparable injury and have incurred and are continuing to incur monetary damages in an amount that has yet to be determined.

WHEREFORE, Plaintiffs pray that this Court:

A.    Enter a judgment declaring that the Franchise Agreement is terminated *nunc pro tunc*; and

B.    Enter an injunctive order enjoining Defendant, its employees, agents, servants, or persons acting on its behalf from using the trademarks, trade name and trade dress of Dunkin' Donuts and from holding themselves out to the public as, and from operating as, a Dunkin' Donuts franchisee, and requiring them to remove all signs, logos, names and other indicia that their shop is or was a Dunkin' Donuts shop; and

C.    Enter an injunctive order ratifying and enforcing the termination of the Franchise Agreement and directing Defendant to comply with its post-termination obligations thereunder *nunc pro tunc*; and

D.    Enter a judgment in favor of Plaintiffs and against Defendant for the

8

damages incurred by Plaintiffs as a result of Defendant's breaches of the Franchise Agreement; and

        E.      Award Plaintiffs prejudgment interest against Defendant in accordance with § 35 of the Lanham Act (15 U.S.C. § 1117); and

        F.      Award Plaintiffs such exemplary and punitive damages against Defendant as are deemed appropriate because of the wilful, intentional and malicious nature of Defendant's conduct; and

        G.      Award Plaintiffs judgment against Defendant for their costs and attorney's fees incurred in connection with this action pursuant to the Franchise Agreement and § 35 of the Lanham Act (15 U.S.C. § 1117); and

        H.      Award Plaintiffs such other and further relief as this Court may deem just and proper.

Dated: New York, New York

        April 25, 2008

                                Respectfully submitted,

                                /s/ Ronald D. Degen
                                **RONALD D. DEGEN** (RD 7808)
                                SCOTT G. GOLDFINGER (SG 9219)
                                KRISTIN M. LASHER (KL 0614)
                                O'ROURKE & DEGEN, PLLC
                                Attorneys for Plaintiffs
                                225 Broadway, Suite 715
                                New York, New York 10007
                                Telephone (212) 227-4530
                                Facsimile (212) 385-9813
                                E-mail rdegen@odlegal.com